IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| DANIEL GARRETT, | : |
| | : |
| Plaintiff, | : |
| | : |
| VS. | : |
| | :     1 : 07-CV-175 (WLS) |
| THOMAS AMMONS, Warden, and | : |
| GARLAND HUNT, | : |
| | : |
| Defendants. | : |

### **RECOMMENDATION**

Presently pending in this *pro se* prisoner 42 U.S.C. § 1983 action is defendants' pre-answer motion to dismiss (doc. 26).

In his complaint, plaintiff alleges that the sentence imposed on him following the revocation of his probation violated the *Ex Post Facto* Clause of the U.S. Constitution. (Doc. 2, p. 4; Doc. 2-2, pp. 2-7). In addition, Plaintiff seeks in his request for relief compensatory damages "resulting from [a] chronic health injury," namely, an "enlarged liver" due to receiving improper medications. (Id.)

Plaintiff asserts that he was originally sentenced to seven years probation in February 2004 for aggravated assault. (Doc. 2, p. 1). Plaintiff additionally asserts that his probation was revoked on August 9, 2006, after he was arrested for aggravated stalking and false imprisonment. (Doc. 2-2, pp. 2-3, 10-11). Plaintiff now alleges that his probation improperly was revoked for three years, with the balance of his sentence suspended. (Doc. 2-2, p. 3).

Specifically, Plaintiff contends that a January 1, 2006, law increased the severity level of his underlying aggravated assault offense, and that he improperly was subjected to the higher severity offense level upon revocation of his probation. (Id., pp. 4, 6). In support of his Complaint, Plaintiff

attaches several exhibits, including an exhibit showing the differences in crime severity levels and the corresponding tentative parole month ("TPM") guidelines prior to and following the January 1, 2006, adjustment in severity levels. (Id., p. 18). Plaintiff's exhibit shows that, prior to January 1, 2006, the severity level of Aggravated Assault was Level V, with a parole guideline range of 34 to 62 months. (Id.) Plaintiff's exhibit additionally shows that, following January 1, 2006, the severity level of Aggravated Assault (with injury or weapon) is now Level VIII. (Id.) In addition, Plaintiff's exhibit shows that the severity level for a probation revocation that occurs based on the commission of a Level VIII offense is Level VII, which results in a parole guideline range of 72 to 102 months. (Id.)

Plaintiff has additionally attached to his Complaint a letter he received from the Parole Board in response to his request for parole reconsideration. (Doc. 2-2, p. 8). In the letter, it was explained to Plaintiff that Level VII was applied based on his probation revocation because the severity level for Aggravated Stalking, his revocation offense (which occurred after January 1, 2006), was Level VIII. (Id.; see also Exhibit 1). Because Plaintiff's revocation offense was a Level VIII offense, his probation revocation based on that offense subjected him to a Level VII guideline range of 72 to 102 months. (See Doc. 2-2, p. 18; Exhibit 1). Thus, the Parole Board's letter explained that Plaintiff could have been subjected to a guideline recommended 84 months, which would have required him to serve the balance of his sentence, but instead, the Board deviated lower and recommended a TPM of 33 months. (Doc. 2-2, p. 8).

In relief, Plaintiff seeks an injunction requiring that a Level V TPM be applied to him based on the original aggravated assault offense. (Doc. 2, p. 5). Plaintiff also seeks punitive damages based on the alleged disregard of federal law. (Id.) Finally, Plaintiff seeks compensatory damages based on

his alleged medical condition. (Id.)

Plaintiff further argues, for the first time, that Defendants violated the *Ex Post Facto* Clause because of Plaintiff's "mental illness," which also violated the Americans with Disabilities Act ("ADA"). (Id.) As an initial matter, a review of Plaintiff's Complaint reveals that he fails to allege any type of ADA violation or that he even suffers from a "mental illness."

Plaintiff further contends that he did not have to exhaust the allegations raised in his Complaint because prisoners may not utilize grievance procedures to address parole issues. (Doc. 30, p. 2). However, Defendants did not argue that Plaintiff failed to exhaust his parole claim. (See Doc. 26, pp. 6-9), but instead failed to exhaust whatever deliberate indifference to a serious medical need plaintiff may have alleged in his complaint.

A complaint is subject to dismissal under Fed.R.Civ.P. 12(b) if the inmate has failed to exhaust his administrative remedies, see Bryant v. Rich, 530 F.3d 1368, 1374-76 (11th Cir. 2008), or if it does not "state a claim upon which relief can be granted," see Fed.R.Civ.P. 12(b)(6). A complaint must allege more than the conceivable, it must allege enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). When ruling on a motion to dismiss, all well-pleaded factual allegations in the complaint must be accepted as true, with all reasonable inferences construed in the light most favorable to the plaintiff. Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007).

*Standing*

Defendants contend that plaintiff lacks standing as he has suffered no actual injury.

The Constitution prohibits the States from enacting an *ex post facto* law. U.S. Const., Art. I, §

10, cl. 1. One function of the *Ex Post Facto* Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission. Collins v. Youngblood, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (citing Beazell v. Ohio, 269 U.S. 167, 169-170, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). Retroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept. See Lynce v. Mathis, 519 U.S. 433, 445-446, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (citing Weaver v. Graham, 450 U.S. 24, 32, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). Garner v. Jones 529 U.S. 244, 250, 120 S.Ct. 1362 (2000).

The controlling inquiry is whether retroactive application of the change in law created "a sufficient risk of increasing the measure of punishment attached to the covered crimes." Garner, supra, quoting California Dept. of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), 514 U.S., at 509, 115 S.Ct. 1597.

Defendants assert that plaintiff lacks standing in that he has failed to allege an actual injury or imminent injury with regard to his parole revocation. Defendants assert that assuming *arguendo* that Plaintiff's parole guideline range should have been calculated at the pre-January 1, 2006, Level V severity level, the resulting parole guideline range would have been 34 to 62 months. (Doc. 2-2, p. 18). Plaintiff's Complaint reveals that the Parole Board ultimately recommended a TPM of 33 months. (Id., p. 3). Therefore, even if the change in the law violated the *ex post facto* clause, Plaintiff cannot show that, as applied to him, he suffered an actual injury. In fact, the recommended TPM of 33 months was below even the low-end of the Level V guideline range he requests.

In his reply, plaintiff contends that he has standing because his allegations must be accepted as true and he has alleged that the Defendants violated the *Ex Post Facto* Clause. (Doc. 30, pp. 1-2). Plaintiff additionally contends that he has standing to pursue this lawsuit because he is entitled to

fundamental fairness with regard to his sentence as it relates to parole eligibility. (Id., p. 2).

It is well-settled in Georgia that inmates have no reasonable expectation of parole, and thus, no liberty interest in their classification or parole. Sultenfuss v. Snow, 35 F.3d 1494 (11th Cir. 1994) (*en banc*); Jones v. Georgia State Board of Pardons and Paroles, 59 F.3d 1145, 1150 (11th Cir. 1995) (explaining that "Georgia prisoners do not have a due-process protected liberty interest in parole")

It appears to the undersigned that plaintiff lacks standing in this action as he has suffered no injury or imminent injury, as he was given a lesser sentence with the new guidelines as they were applied to him than he would have received under the old guidelines he requests.

*Failure to Exhaust*

Defendants assert that plaintiff failed to exhaust administrative remedies with regard to his deliberate indifference to a serious medical need claim, to the extent that plaintiff is actually alleging such claim for his "chronic" and "enlarged" liver, or for his unnamed mental illness.

42 U.S.C.§ 1997e(a) of the PLRA mandates that "no action shall be brought" by a prisoner under any federal law until the prisoner has exhausted all "administrative remedies as are available," as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998).

According to the affidavits and other records filed by defendants, the Georgia Department of Corrections ("GDC") maintains a grievance process that is subject to explicit guidelines and available to all inmates. (Doc. 26,Exhibit 2, Affidavit of Benjie Nobles ¶ 6). Exhaustion of the GDC grievance procedure requires a three-step filing process: filing of an informal grievance, a formal

grievance, and an appeal. (Id., ¶¶ 8-9). Grievance forms are available in the control rooms of all living units. (Id., ¶ 7). Inmates located in isolation and segregation areas may obtain a form upon request. (Id.) Once a resolution is attempted, if the inmate does not feel that the informal grievance has been resolved, the inmate may move to the second step of the process and file a formal grievance. (Id., ¶ 8). A formal grievance is considered at the institutional level, and the Warden provides a written response to the inmate, which states the decision reached. (Id., ¶ 9). At that time, the inmate is also advised of the appeal procedure and given an opportunity to file an appeal, which is the final step in GDC's administrative process. (Id.)

Defendants assert that plaintiff failed to comply with GDC's grievance procedures and therefore has not exhausted his administrative remedies as required by the PLRA. (Id., ¶¶ 10-11). Specifically, Plaintiff's grievance records reveals that he has not filed any grievances at Autry State Prison. (See id., ¶ 10).

Plaintiff has not satisfied the exhaustion requirement of § 42 U.S.C. 1997(e). The clear mandate of <u>Alexander v. Hawk</u> is that a prisoner must exhaust the remedies available under an administrative remedy program before filing an action such as this. Given these circumstances, the undersigned believes that dismissal of these claims for deliberate indifference to a serious medical need is mandated for failure to exhaust administrative remedies.

The court must follow the dictates of circuit law. This circuit, in interpreting the PLRA, has determined that exhaustion is now a pre-condition to suit, and the courts can no longer simply waive those requirements where it is determined the remedies are futile or inadequate.   <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1326 (11th Cir. 1998).

*ADA*

Plaintiff raises for the first time in his response to defendants' pre-answer motion to dismiss that Defendants violated the *Ex Post Facto* Clause because of his "mental illness," in violation of the Americans with Disabilities Act (Doc. 30, p. 2).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the . . . programs . . . of a public entity." 42 U.S.C. § 12132. Here, Plaintiff fails to allege how he was a "qualified individual" nor has he identified a specific "parole program" from which he allegedly was excluded. Plaintiff fails even to identify a specific mental impairment and does not allege how his unspecified illness amounts to a disability. His vague and conclusory allegations do not state a claim for relief. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1995).

Therefore, it is the RECOMMENDATION of the undersigned that defendants' motion to dismiss be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 11th day of August, 2009.

                                       //S Richard L. Hodge
                                       RICHARD L. HODGE
                                       UNITED STATES MAGISTRATE JUDGE

msd